Your Honor, the second case in the document this morning is 2-24-0574, the people of the state of Illinois plaintiff, the Emigre Valderama, defendant, Appellee, Zacharias, Sessional Abuse Center, Non-Party Subpoena, Department of Appellate. Arguing on behalf of the Appellate, Mr. David R. Gallagher. Arguing on behalf of the Appellee, Mr. Jason S. Breyfuss. All right, counsel, you may proceed when ready. Please feel free to adjust the microphone. Your Honor, as I am David Del Rey, I represent Zacharias Center, Non-Party Subpoenaed Deponent. In this case, I don't represent A.V., the victim, but I would be remiss if I did not lay a little bit of background. She was victimized and traumatized by her father, who, by the way, I think is also important to note in the records, that when he was confronted by the police, said, I did whatever she said I did. Thereafter, after her disclosure, she's then victimized by her own family, by her mother and her paternal grandmother, who go on this pattern of trying to convince her to recant and write statements that are contrary to her initial disclosure. And then, the trial court. And in my opinion, the trial court was on its way to also violating her rights and betraying the trust that she has, not only in the statute, but under the Constitution, that protects victim rights. Mr. Del Rey, is it clear from the record that your client knew about the various pressures that were being placed on her from everywhere? No. No, I don't think that's in the record at all. In fact, no one knows what she has talked about with Zacharias Center. That's why we're here this morning. Those records weren't disclosed to any state's attorney, as there was kind of an inference, I think, in the response brief that that might have been tendered to ASA's Romano. You'll see from the record that there was an affidavit from Sandy Williams, the Zacharias Executive Director. Those records have not been disclosed to anyone, including myself, because they are privileged under the statute. Under the statute that I submit to you is one of the most unambiguous statutes in the Code of Civil Procedure. That statute, which you know has been amended to take away the qualified privilege, it is now unqualified and absolute. That's what the Supreme Court said, and that really wasn't a stretch because the statute is crystal clear, in my opinion. In fact, violating that statute is a misdemeanor, as counsel has indicated in his response. When I look at the record and I look at what defense counsel served, it was a very general subpoena, not specific at all. In fact, the subpoena, which I have with me, says to the Zacharias Center, you're commanded to bring the following any records or notes for AV containing statements or summary of statements made by AV regarding allegations of sexual abuse committed against her by the court for a camera inspection pursuant to the attached court order. There is no exception. Even if you had a specific, you had knowledge of what was the content, you'd be guessing. And that's unfortunately what Judge Leavitt did, in my opinion. Judge Leavitt said, after the defendant speculation, and he speculates, the trial court does, and says there is good reason to believe there is impeaching material in the records. I don't even know what that's based on. Given the record, what we have is, and unlike Miller, Justice Hutchinson, which you concurred with Justice Burkett, who wrote that in 2022, we don't have, we have so many statements that they could use, as opposed to these confidential privilege statements. Because of how this case played out for poor AV, we've got her initial disclosure in writing. We've got then a recantation that her mother typed and brought to the police department. We've got multiple victim-sensitive interviews in writing, on video, all kinds of impeachment material that the defense has been provided that they can use. But none of that leads to any sort of exception to get to the privilege confidential records that are absolute and unqualified. And I would say this with respect to Miller. Counsel says in their response, well, I think Miller left the door open. And I've read Miller a lot, and I don't see anywhere where Your Honor concurred with Justice Burkett that that privilege was anything other than absolute and unqualified. And I just want to read from that, and I know it's Rule 23, I understand that, but I think it's persuasive. Your Honor wrote, First, we note that in Foggy, our Supreme Court never expressly provided that the absolute privilege codified in Section 802.1, which had since been amended to remove any language concerning in-camera inspections, should yield to a defendant who makes a specific showing that rape counseling records contain exculpatory evidence. We don't have that here. Not only do we not have that, but you're saying here, even if we did, it's not in Foggy. And this Court goes on to say, Instead, our Supreme Court found that there, where the defendant made no specific showing as to a need to obtain absolutely privileged materials, there was no need to abrogate the victim's privilege over her counseling records. And finally, you say, Nonetheless, even if the Foggy Court did carve out such an exception, which I don't think it did, and I don't think you said that in here anyway, to the absolute privilege codified in 802.1, let the Foggy defendant here fail to articulate any specific need to obtain GM's counseling records. And I think that is exactly what we have here. We have a phishing exhibition that is not allowed under 802. I'd have to quarrel a little bit with you saying Foggy didn't meet such a broad rule. Because it's clear, I think, at least I guess it's clear when you make up your mind it's clear, they say, well, there's nothing here. It was just this general request that it, and I should have that in front of me, but there was no showing that the counseling communications would provide a source of impeachment. And so therefore, the privilege did not meet under those circumstances to be breached. And I give it, you're absolutely right, it is an absolute privilege. And they clearly wanted to enshrine maybe the rape counseling above any other mental health counseling. Because that has been, you know, that has yielded to at least in camera. I get that. But I wonder if the fact that Judge Levitt said something like these are likely to contain impeaching material in the sense that the record seems to reflect, if I have this wrong, tell me, that she made Statement 1, Statement 2, Statement 3, then began counseling. And that's all we know, I think. And then added some allegations, Statement 4. And so I can't say I find that conclusion that they might contain impeaching material to be wild and unexplained. Is it enough? That's a different question, I think. Is it unavailable from any other source? Is it critical like it was in Davis? Is it cumulative? I think those are good questions. That's how I'd approach you. No, and I appreciate that. And Justice Mullen, I've struggled with that question because in Foggy, wouldn't it have been nice if the Supreme Court maybe gave us some examples? Like when can this, and they didn't, obviously, for their own reasoning. So I'm trying to think, what could possibly be the exception? You would have to know. You would have to know what's in those privileged records. And nobody does other than AV. Now, if AV was to disclose those to some third party and break the privilege, that's different. There's no evidence in the record. What we do have, we had a grandmother who said, hey, defense counsel, she's still talking. She's talking to the Zachariah Senate. You should get those records. So that's all we have is this busybody grandmother trying to protect her son at the expense of her granddaughter. And that's how this happened. Now, that's all we have. Now, we do have these contradictory statements, yes. And unfortunately, AV is going to be subject to cross-examination on those. And how did that all play out? It's very unfortunate that there were four VSIs, but there are. But that still, in my humble opinion, doesn't breach the absolute privilege. And I agree with you. We've got cumulative and all kinds of other admissible documents that they could use to impeach her. Not only to call her, but to call the grandmother. What did she say to you? We probably can figure out what grandma's going to testify. Same as the mother. She'll probably say she recanted. Okay. Then why do you need the records? That is the final stop of AV's betrayal. Someone who is going to believe her, listen to her, be nonjudgmental, and never disclose ever what was said. That's the point of the statute, is to help people like AV who are victims of rape, familial rape. And so, again, I understand why we're here. I get it, and I get where Judge Leavitt was coming from. But when I look at the case law, the statute, and the Constitution, which, by the way, also talks about AV's right to privacy, I just don't think we're even close to any, we're not even on the track to get to her, in my opinion. If there's nothing else? Do you have any additional questions? No, I don't. All right, thank you, counsel. You will have time in rebuttal. Thank you, counsel. Counsel, please step forward and proceed when ready. And, again, if you need to adjust the microphone, please do. May it please the Court. Counsel, I'm Jason Dreyfuss. I represent Macreed Valderrama. The trial court here correctly called the law when it ordered the Zacharias Center to disclose AV's records for in-camera inspection. And I'd like to direct this Court's attention to the record at pages 82 to 83 when the Court said the following, quote, it's unconscionable to think that a defendant such as Mr. Valderrama could be convicted for information that could be viewed as exculpatory, non-cumulative, and not inadmissible, and certainly not available by other means were to be hidden from him, end quote. That is what the trial court was focused on. And so the Zacharias Center is focused on there's so much evidence, there's so many other sources, there's so much discovery that was given to Mr. Valderrama. That is actually irrelevant to the issue because what the trial court was focused on is this small slice of information that the trial court said at record pages 89 to 90, quote, the defense offered a reason to believe that counseling records would provide a source of impeaching material that are unavailable from other sources, end quote. The small slice of information that provides or likely provides that impeaching information are the records from the Zacharias Center. VSI number one occurred, A.B. implicated her father. VSI number two occurred, she recanted that statement. VSI number three occurred, she recanted her recantation. Then her mother contacts the police and says, listen, my daughter has been receiving counseling at the Zacharias Center. She's made some additional allegations concerning her father during that counseling. You should re-interview her. Then VSI number four occurs. Based on VSI number four, additional charges are filed against Mr. Valderrama. And so it's that counseling that occurs between VSI number three and VSI number four that the court believed would include material useful to the defense. And it's that quote, that language, material useful to the defense, that comes exactly from father. Well, counsel, if that's what your client's trial counsel actually wanted, why was that not identified in the subpoena? The subpoenas are like everything from the time she walked in the door until the time they went to trial. Why wasn't it specific? Well, it's as specific as it can be. No, you just made it very specific, that that's what they're looking for. She's still talking, and that's the new charges and then this fourth event. Why wasn't it identified that way? It would have made a big difference based upon statute, I believe, had it been specific as opposed to, well, let's give this everything and see what shakes out. So it is limited to, so I hear what you're saying. If I understand the justice correctly, you're saying that it should be limited to just the new allegations? Well, if that's what grandma is saying to defense attorneys, look, she's still talking. This is what's happening. We know what she said in one, two, and three. Let's go to number four. You don't, I mean, not you personally, but the subpoena doesn't say that. It could have, other than just let's throw in the hook and see what comes out, because that's what that subpoena sounds like to me. Yes and no. I would concede it could be more narrow. So I would concede, yes, it could certainly have been more narrowly tailored. At the same time, the Zachariah Center and amicus also say that there's a whole lot of other information that is discussed around these counseling centers, other than the sexual assault or alleged sexual assault between A.V. and her father. So in that sense, I would argue that it is narrow because there could have been other sexual assaults. There's referrals that the Zachariah Center probably make. There might be medication. There might be other sort of treatments that they make. So we're not asking for that. All of those other things are outside of the scope. So it's just limited to the sexual assault between A.V. and her father. So in that sense, I would argue it's narrow. Could it be narrower? Yes. But may I ask, I guess I'm a little concerned about a rule. And if the Supreme Court wasn't foggy, they said, well, we're not going to allow even a meet-and-camera, which is going to be available in every case because that would defeat the privilege everywhere. So, I mean, you've said, well, Judge, and I didn't see that as a holding. But he did say, I don't think the rule is that you couldn't get. I saw that. Maybe I interpreted it a little differently than you. You couldn't get exculpatory material or impeaching material. But you could argue that in every case. There could be exculpatory material in the rape counseling of every victim. So that is a fair concern? Here, unlike foggy, we have what I see, and I'm trying to look at it kind of scientifically. I don't know that there's a statement in there that because of the counseling, then she added allegations. I don't see it that clear. So if you do, that would be interesting. But hold that for a moment. What I definitely saw is that in between three and four, there was counseling and there were additional allegations. I also see in the record, and I think it in statement four, the victim said, I feel safe now. The defendant is in jail, and I feel something to that effect. So could there be the conclusion that because of the counseling, I disclosed more? I think that's arguable. But is that the rule, then? Every time there's a recantation, then, and it coincides with counseling, then, there will be a new camera allowed under statute that has an absolute privilege. I just, I would take issue with you, and I don't mean to hold the floor, especially while your minutes are counting away, but, you know, the idea of, well, it might be something that's culpatory in their, you know, maybe, but then it'd be in every case, and then we wouldn't have a privilege, would we? So I think to focus on, I guess my stronger position, would be to focus on the potential impeaching nature of the materials. And I think from the trial court's perspective, when mom goes to the police and says, my daughter is now in counseling, she's revealing new allegations, and then there's a subsequent VSI, the court's thinking, huh, now instead of four statements that the defense has access to, there's actually a fifth statement out there that could provide, reasonably provide, impeaching information. Me, as the trial court, would like to conduct an in-camera evaluation of that information to determine, is there impeaching information? Mr. Valderrama might never get access to that. Trial court might say, you know what, this is wholly consistent with VSI number four, and Mr. Valderrama might never see those Zacharias Center things. Wouldn't VSI four be inconsistent with VSI three and VSI one? Would it be inconsistent? Yes. I mean, but I guess by. . . If there were additional allegations. By omission only. I mean, if the only difference is the addition of items, right, so if the inconsistency is just additive, then that would be the inconsistency. But I think what the trial court's focused on is what's the discrepancy or potential discrepancy between what was said during counseling prior to VSI number four. And so I think with respect to what the Foggy Court was concerned with, in terms of addressing the justice's concern is they specifically said twice the defendant's suggested procedure was not constantly required in this case. We do not believe that the procedure was required to be breached in this case. And so I guess the courts fear that this is going to open the floodgates to everybody's going to go on a fishing expedition for exculpatory information. I think that Mr. Balderrama here, based on the facts in this case, based on the series of events with VSI number one, two, three, and then counseling, and then VSI number four, I think in this case I think had adequately persuaded the trial court that there was a reasonable likelihood that there was impeachment information that is totally unavailable from any other source. And so I feel that the court was correct. Sure. May I question you a little bit? I don't mean to hog up your time. But in what way is it unavailable in that allegedly she made the same statement in VSI four? So you could impeach her. There are statements to the friend. I think the mother may have that wrong. The grandmother, I may have that wrong. But there were other statements. So in what way is it unavailable? What's unavailable is that, according to your supposition, she may have said in counseling other things happened. And so, yes, the statements, the fact that it was made in counseling would be unavailable. But the fact that it was made is available and it's cumulative, really. No. I wonder if it's cumulative. So that would not be the only way to be impeaching. There could be factual inconsistencies between how she described the new acts during counseling and how she described them in VSI number four. Couldn't you say that in every case? The victim in relating what they related to the police and the counselor may have said it differently. I guess you could. But this is a pretty unique factual scenario where there's four VSIs and there's interstitial counseling, and so I don't think it's going to open the floodgates to every single child sex case in a way that's going to gum up the works. So I think in this case it would be appropriate. So I would offer that as another way of counseling. Counsel, is there any limitation on cross-examination? So obviously there are inconsistent statements here, and there's the timing argument. Is there anything that precludes questioning on cross-examination concerning that without having the actual information from Zacharias? Like could the defense cross-examine her about the counseling? About the fact of a statement post-counseling that differs from statements pre-counseling. No, I think that that would be right for counseling. I think probably they would be instructed if the court upheld or reversed and precluded these records from being released, then the privilege would be upheld and anything that sort of treaded too closely to the privilege they could get into. But inconsistent statements made at different times I think would be right for cross-examination. Thank you. I wanted you to address, you had other arguments concerning the absolute nature of the privilege, concerning mandatory reporters. Yes. I just wanted to make sure you had time there. Sure. So the Zacharias Center spends a lot of time, pages and pages of time in their brief, talking about the privilege being absolute, which means that it has absolutely no restriction, exception, or qualification. And that's just flatly wrong based on the plain language of the statute. We know if there's imminent harm of physical risk to somebody, the privilege can be breached. And the second example is if there's in a minor sex case, which this one is, if a minor discloses to a mandatory reporter that, like the Zacharias Center, employs a psychologist or a social worker, they have an obligation to breach the privilege. And the mandatory reporter statute specifically addresses that. They say notwithstanding any privilege, you are obligated to report. And so those are two examples where, and I use the word permeable, call it the privilege de facto qualified, whatever the court likes. Frankly, the Zacharias Center was left stammering with an explanation for how their privilege is still absolute. It's just not. Those are two examples where it's no longer absolute because the counselor is going to walk out of that room and they're going to call the police or they're going to call DCFS. So all of a sudden, this absolute privilege isn't so absolute anymore. And so I guess I'm offering to this court situations where the Zacharias Center wants to tell you that this is absolute, it's absolute, it can never be breached, no way, no how, you can never, ever, ever, ever betray this young girl. And I'm offering two examples where, yes, actually you can. But isn't, oh, I'm sorry. Go ahead. Well, but isn't the, during the counseling at some point, probably in the beginning of each session, there is some explanation of this issue. If something else comes up, we are required to tell the police. But we won't say anything else to mom, to dad, to grandma. I mean, as we interview kids, we say that. Oh, we say this conversation is between us. It's not to be imparted to mom or to dad. And so, although I didn't read any of them, I'm sure there are disclaimers that even a 14-year-old would understand. I don't know the answer to that question. It's not in the record. I don't know. If the court doesn't have any other questions, I'll sit down. No, thank you, Counselor. Thank you. Counsel, you may proceed with your vote. Thank you. Justice Kennedy, the answer to your question is absolutely yes. AV is going to be subject to a question just like this. Young lady, isn't it true that you gave more detailed statements with more and brand new allegations you had never made before after you started counseling at the Zacharias Center? Yes. A defense attorney can ask that question in good faith without having the records. So the answer to your question is yes, they don't need the records. She's going to be subject to that, unfortunately. Justice Mullin, you talked about AV saying she disclosed in the fourth VSI because she felt a sense of safety and security because her father was in prison. I agree with that. She said that, and that's in the record. And I would submit she also likely said that because when she was in counseling, she was also in a safe place, in a safe setting where she felt comfortable in giving more horrific details, by the way, of what actually occurred going all the way back to fourth grade. That's the point of the counseling. That's the point of the therapy. And isn't that the basis that we keep them privileged so she can heal and become healthy and become a healthy adult? And I would submit the answer to that is yes, and that's why the privilege is absolute. Now, counsel talks about whether it's permeable. Well, listen, it might have been when it was qualified. It certainly isn't now. And, yes, DCFF, they're mandated reporters. I wholeheartedly agree with that. But in this case, look at the procedure of it. At this point, it's already been investigated. The father's been charged. He's been indicted. She's given statements. There's no point to breach any sort of confidentiality based on the statute at this point in time. If nobody had ever been charged and she just goes to Zacharias Center and makes all these disclosures, that's different. That's a totally different set of facts, not like this at all. When we look at it, and Justice Mullin, you asked the question, and I thought about that one as well quite a bit with the timing between the third and the fourth and the counseling starting in between. And ASA Zarmaino said something to the effect of, there's nothing in the Zacharias records that led to additional charges. Now, counsel took that as, oh, he must have seen them. No, his point, I think he was saying, is that that was solely based on VSI-4. We watched VSI-4. It was more detailed. And based on that, I think there was two more indictments. They were never disclosed to anyone. I said this originally, and I think that's accurate. In fact, I know it's accurate. I just wanted to take one moment to thank my amicus. I think that the state pointed out, more awfully than I did, AV's constitutional rights to privacy, which I think read in conjunction with 802.1, makes it impermeable. That is the privilege. And it keeps it as a shield for AV. And it comports with the purpose of the act, which I'm not going to read to you. You know the purpose. It sets forth what it provides, a safe place, a safe listener, a professional who can help with no, without the slightest chance of any sort of betrayal like AV has had throughout this case. Your Honors, I ask that you quash that subpoena. I ask that you reverse the trial court's order for an in-camera inspection that is way beyond anything contained in the current version of the statute. And I ask that you reverse the civil contempt order issued against my client, Zachariah Senator, and vacate any fines that may have accrued. All right. Thank you very much, Counsel. Thank you, Your Honors. We will take this matter under advisement, and AV is positioned in due course.